NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianllp.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianllp.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianllp.com
SALISIAN LLP
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:    (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@amerisbank.com
**AMERIS BANK**
575 Anton Boulevard, Suite 1080
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
BALBOA CAPITAL

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL, | Case No. 8:25−cv−01770−JDE |
| | [Assigned to the Hon. John D. Early] |
| Plaintiff, | |
| vs. | **PLAINTIFF BALBOA CAPITAL'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT DESIGN REAL ESTATE SOLUTIONS, LLC** |
| DESIGN REAL ESTATE SOLUTIONS, LLC, a Missouri limited liability company, | |
| Defendant. | Complaint Filed:   August 12, 2025 |
| | Trial Date:          None |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6A of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, CA 92701, the Honorable John D. Early presiding, plaintiff Ameris Bank, doing business as Balboa Capital ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3 against Defendant Design Real Estate Solutions, LLC ("Defendant") for a judgment amount of **$153,468.16**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendant in the total amount of $153,468.16, as Balboa has established (a) a sum certain due and owing by Defendant to Balboa pursuant to Equipment Financing Agreement entered into by Defendant and Balboa; (b) that Defendant is not in military service and is not a minor or incompetent person; and (c) attorneys' fees and costs are properly awardable.

//
//
//
//
//
//
//
//
//
//
//
//

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the supporting declarations of Patty W. Chen and Don Ngo, and the exhibits attached thereto, the pleadings and papers filed in this action, and upon such further briefing, authorities, and argument submitted to the Court prior to, or during, the hearing on this matter.

DATED: January 8, 2026              SALISIAN | LEE LLP

By: _____
    Neal S. Salisian
    Jared T. Densen
    Patty W. Chen

    Attorneys for Plaintiff
    AMERIS BANK d/b/a BALBOA CAPITAL

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELEVANT FACTS ............................................. 1

    a.    The Equipment Financing Agreement. .................................... 1

    b.    Attorneys' Fees and Costs ........................................................ 3

    c.    Default Judgment Motion ......................................................... 3

II.   LEGAL ARGUMENT ...................................................................... 4

    A.    Plaintiff Will Be Highly Prejudiced If Its Default
          Judgment Motion Is Denied. ..................................................... 5

    B.    Plaintiff Has A High Likelihood Of Success On The
          Merits Of Its Substantive Claims And Its Complaint Is
          Sufficiently Pled. ...................................................................... 7

    C.    The Sum Of Money At Stake Favors An Entry Of A
          Default Judgment Against Defendant. ...................................... 9

    D.    There Are No Material Facts That Are Reasonably In Dispute. ......... 10

    E.    Defendant's Defaults Are Not The Result Of Excusable Neglect ....... 12

    F.    Policy Concerns Favor Default Judgment In This Matter. .................. 14

    G.    Plaintiff Has Proven Its Damages. ...................................................... 14

III.  CONCLUSION .......................................................................... 17

1

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Acoustics, Inc. v. Trepte Constr. Co.*,
4
 14 Cal. App. 3d 887, 916 (1971)..........................................................................7

5

*Draper v. Coombs*,
6
 792 F.2d 915, 924 (9th Cir. 1986)........................................................................12

7

*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
8
 710 F.2d 170, 176 (4th Cir. 1983)........................................................................12

9

*Eitel v. McCool*,
10
 782 F.2d 1470, 1471-72 (9th Cir. 1986). ...................................... 4, 5, 7, 9, 10, 12

11

*Geddes v. United Fin. Group*,
 559 F.2d 557, 560 (9th Cir. 1977)......................................................................7, 10
12

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
13
 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) ..........................................................10

14

*McKnight v. Webster*,
15
 499 F. Supp.  420, 424 (E.D. PA 1980) ................................................................13

16

*NewGen, LLC v. Safe Cig, LLC*,
17
 804 F.3d 606, 616 (9th Cir. 2016)...................................................................12, 13

18

*O'Connor v. State of Nevada*,
19
 27 F.3d 357, 364 (9th Cir. 1994)..........................................................................12

20

*Pena v. Seguros La Comercia, S.A.*,
21
 770 F.2d 811, 814 (9th Cir. 1985)........................................................................14

22

*Penpower Tech, Ltd. v. S.P.C. Tech.*,
 627 F. Supp. 2d 1083 (N.D. Cal. 2008) .....................................................9, 10, 14
23

24

*PepsiCo, Inc. v. Cal. Sec. Cans*,
 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ...............................................5, 6, 7

25

*Reichert v. Gen. Ins. Co.*,
26
 68 Cal.2d 822, 830 (1968).....................................................................................7

27

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
28
 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) .......................................................13

2

*Walters v. Statewide Concrete Barrier, Inc.*,
   No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ........... 9

**STATUTES**

Code of Civil Procedure § 1620 ................................................................... 7

Code of Civil Procedure § 3300 ................................................................... 7

Fed. R. Civ. P. 55 ....................................................................................... 4

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2) ....................................................... 7

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against defendant Design Real Estate Solutions, LLC ("Design Real Estate" or "Defendant").

### a.   The Equipment Financing Agreement

This action involves a claim for damages by Balboa against Defendant for breach of the written Equipment Financing Agreement No. 340340-002 (the "EFA"). [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and Design Real Estate, on the other, entered into the EFA on or about June 12, 2024. [*See id.*] Under the terms of the EFA, Balboa loaned to Design Real Estate the sum of $135,879.81, in order to finance equipment for its business (the "Collateral"). [*See id.*]

Under the EFA, Design Real Estate was required to make sixty (60) monthly payments of $2,905.65, beginning on July 28, 2024. [*See id.*, ¶4, Exh. A.] The last payment received by Balboa was credited toward the payment due for April 28, 2025. [*See id.*, ¶5, Exh. B.] Therefore, on May 28, 2025, Design Real Estate breached the EFA by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendant's default there remained fifty (50) monthly payments, for a total of $145,282.50, due to Balboa. [*See id.*, ¶6, Exh. B.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …" [*See id.*, ¶7, Exh. A.] Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to

what the present value would be in today's dollar figure.  [*See id*.]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more.  [*See id*.]  Based upon this formula, Balboa calculated that the amount due totaled $134,179.12 ("PV'D Rent").  [*See id*., Exh. B.]

In addition to the PV'D Rent, Defendant also owed the monthly payment for May 2025 in the amount of $2,905.65, which had not been accelerated as it was already due and payable. [*See id*., ¶8, Exh. B.]  Thus, $137,084.77 remains owed to Balboa.  [*See id*.]  Defendant has since failed to make further payments.  [*See id.*]

In addition, based on the amount due of $137,084.77, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Cal. Civ. Code section 3298(b), from May 28, 2025, the date of breach, to February 5, 2026, the date noticed for the hearing of this Motion for Default Judgment ("Default Motion"), for a total interest amount of **$9,537.70**, accruing at a rate of **$37.55 per day**, until the entry of judgment.  [*See id*., ¶9; *see also* Declaration of Patty W. Chen ("Chen Decl."), ¶¶5-6.]

### b.    Attorneys' Fees and Costs

Pursuant to the "Default and Remedies" section on page 3 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendant.  [*See* Chen Decl., ¶7.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of $6,341.69.  [*See id.*] Balboa has indeed incurred **$504.00**, in recoverable costs - $405.00 for filing of the Complaint and $99.00 for service upon Design Real Estate.  [*See id*., Exh. C.]

### c.    Default Judgment Motion

Balboa's Default Motion satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its Complaint and case-initiating documents on August 12, 2025.  [*See* Dkts. 1-4.] Defendant was properly served on September 9, 2025, pursuant to Federal Rule of

Civil Procedure 4.  [*See* Dkt. 8.]  On October 21, 2025, Balboa filed its Request for Clerk to Enter Default against Defendant ("Default Entry Request"), and the Clerk entered default on December 22, 2025.  [*See* Dkts. 9, 11.]

Defendant is not a minor, incompetent person, or person in military service or otherwise exempted from default judgment under the Servicemembers Civil Relief Act of 1940 (the "SCRA").  [*See* Chen Decl., ¶4.]

Moreover, this Court has subject matter jurisdiction over the instant action. The amount in controversy, as alleged in the Complaint and as set forth herein, exceeds $75,000.  [*See* Dkt. 1; *see also* Chen Decl., ¶8.]  Plaintiff Balboa was and still operates as a California corporation, with its principal place of business in Orange County, California.  [*See id*.]  Balboa is also now a wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank.  [*See id*.]

Based upon my office's research, and information and belief, Design Real Estate is a Missouri limited liability company, with its principal place of business in Missouri.  [*See id*., ¶9, Exh. D.]  Additionally, based upon further research, and information and belief, Raymond Porter and Thomas Porter are the only members of Design Real Estate and both are citizens of Missouri.  [*See id*.]  Thus, Design Real Estate is a citizen of the State of Missouri.  [*See id*.]  As such, there exists complete diversity amongst Plaintiff and Defendant.  [*See id*., ¶10.]

As set forth below, a default judgment should be entered against each of the Defendant since Balboa satisfies all seven factors under *Eitel*.  Moreover, Balboa has adequately proven its damages.  Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendant in the amount of **$153,468.16**.

1

## II.    **LEGAL ARGUMENT**

2       "When a party against whom a judgment for affirmative relief is sought has

3   failed to plead or otherwise defend," the Court may enter a judgment of default

4   upon Plaintiff's application after an entry of default.  *See* Fed. R. Civ. P. 55.  Local

5   Rule 55 sets forth the procedural requirements that must be satisfied by a party

6   moving for a default judgment.  Balboa's Motion has satisfied such requirements.

7       Here, Balboa filed its Complaint and case-initiating documents on August 12,

8   2025.  [*See* Dkts. 1-4.]  Defendant Design Real Estate was properly served on

9   September 9, 2025, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkt. 8.]

10  On October 21, 2025, Balboa filed its Default Entry Request, and the Clerk entered

11  default on December 22, 2025.  [*See* Dkts. 9, 11.]

12      Defendant is not a minor, incompetent person, or person in military service

13  or otherwise exempted from default judgment under the SCRA.  [*See* Chen Decl.,

14  ¶4.]

15      The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter

16  a default judgment:

17          (1) the possibility of prejudice to the plaintiff; (2) the merits
            of plaintiff's substantive claim; (3) the sufficiency of the
18          complaint; (4) the sum of money at stake in the action; (5)
            the possibility of a dispute concerning material facts; (6)
19          whether the default was due to excusable neglect; and (7)
            the strong policy underlying the Federal Rules of Civil
20          Procedure favoring decisions on the merits.

21  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not

22  prove that all seven factors weigh in its favor, as courts *may* consider these factors

23  in their discretion on whether to enter a default judgment.  *See id*.

24      Here, the underlying facts in this action show that all seven of the *Eitel*

25  factors weigh in Balboa's favor and thus supports the entry of default judgment.

26

27

28

**A.**    **Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied.**

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendant's deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to the EFA, financed the Collateral for Design Real Estate, with Defendant agreeing to make sixty (60) monthly payments of $2,905.65, for which fifty (50) monthly payments for a total of $145,282.50.  [*See* Ngo Decl., ¶¶5-6, Exhs. A-B.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …"  [*See id*., ¶7, Exh. A.] Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure.  [*See id*.]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more.  [*See id*.]  Based upon this formula, Balboa calculated that the amount due totaled $134,179.12.  [*See id*., Exh. B.]

In addition to the PV'D Rent, Defendant also owed the monthly payment for May 2025 in the amount of $2,905.65, which had not been accelerated as it was already due and payable. [*See id*., ¶8, Exh. B.]  Thus, $137,084.77 remains owed to Balboa.  [*See id*.]  Defendant has since failed to make further payments.  [*See id.*]

MOTION FOR DEFAULT JUDGMENT
CASE NO.: 8:25−cv−01770−JDE

1  Balboa has made demands for its monies from Defendant, all of which

2  Defendant has failed to pay back.  [*See id.*, ¶10.]

3  Balboa filed its Complaint in this action to recover the monies owed on it,

4  but Defendant has been unwilling to participate in, or otherwise acknowledge, the

5  litigation.  Balboa's Default Motion is its final option for an attempt at recovery,

6  and without the Court granting the default judgment, Balboa will be prejudiced and

7  be denied its right to a judicial resolution of its presented claims.  *See PepsiCo*, 238

8  F. Supp. 2d at 1177.

9  Moreover, if Balboa's Default Motion is denied, it will suffer a significant

10  loss due to no fault of its own, and Defendant will obtain a significant windfall of

11  over $153,468.16.  Not only will the deliberate nonaction by Defendant and their

12  continued stalling techniques be unjustly rewarded, but Balboa will effectively be

13  penalized for its procedurally proper demands for the return of its monies available

14  through the court system's proper channels.

15  Balboa will be substantially prejudiced, especially with no other available

16  recourse, should its Default Motion be denied, and thus, further support granting

17  the Default Motion against Defendant.

## B.  Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.

20  "The general rule of law is that upon default[,] the factual allegations of the

21  complaint, except those relating to the amount of damages, will be taken as true."

22  *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Courts often

23  consider the second (merits of the claim) and third (sufficiency of the complaint)

24  factors under *Eitel* together.  *See PepsiCo*, 238 F. Supp. 2d at 1177.

25  The elements for a breach of contract are: (1) the existence of a contract, (2)

26  performance by the plaintiff of its obligations under the contract, (3) breach of the

27  contract by the defendant, and (4) resulting damages proximately caused by the

28  defendant's breach of contract.  *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830

6

(1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met.  Specifically, Balboa, on the one hand, and Design Real Estate, on the other, entered into the EFA on or about June 12, 2024. [*See id.*, ¶3, Exh. A.]  Under the terms of the EFA, Balboa loaned to Design Real Estate the sum of $135,879.81, in order to finance the Collateral for its business. [*See id.*]

Under the EFA, Design Real Estate was required to make sixty (60) monthly payments of $2,905.65, beginning on July 28, 2024.  [*See id.*, ¶4, Exh. A.]  The last payment received by Balboa was credited toward the payment due for April 28, 2025.  [*See id.*, ¶5, Exh. B.]  Therefore, on May 28, 2025, Design Real Estate breached the EFA by failing to make the monthly payment due on that date, and thus, Design Real Estate has remained continuously in default.  [*See id.*]

At the time of Defendant's default there remained fifty (50) monthly payments, for a total of $145,282.50, due to Balboa.  [*See id.*, ¶6, Exh. B.]  Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …"  [*See id.*, ¶7, Exh. A.] Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure.  [*See id.*]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more. [*See id.*]  Based upon this formula, Balboa calculated that the amount due totaled $134,179.12.  [*See id.*, Exh. B.]

In addition to the PV'D Rent, Defendant also owed the monthly payment for May 2025 in the amount of $2,905.65, which had not been accelerated as it was

7

already due and payable. [*See id.*, ¶8, <u>Exh. B</u>.]  Thus, $137,084.77 remains owed to Balboa.  [*See id.*]  Defendant has since failed to make further payments.  [*See id.*]

There is no doubt, and it cannot be disputed that: (1) Balboa and Design Real Estate entered into the EFA; (2) Design Real Estate received the loan in order to finance the Collateral for its business; (3) Defendant ceased making payments pursuant to the EFA; and (4) Balboa has suffered and continues to suffer damages due to Defendant's continued nonpayment under the EFA.  Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

### C.    The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendant.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the EFA in the amount of **$137,084.77**; prejudgment interest from May 28, 2025, the date of breach, to February 5, 2026, the date noticed for the hearing of this Default Motion,

in the amount of **$9,537.70**, plus **$37.55 per day**, until the entry of judgment.  [*See* Chen Decl., ¶¶5-6.]   Moreover, Balboa seeks statutory attorneys' fees, in the amount of $6,341.69; and costs in the amount of $504.00.  [*See id.*, ¶7, Exh. C.]

The damages sought are contractually-based and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum pursuant to Cal. Civ. Code section 3298; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶¶5-7.]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, and other factors, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D.    There Are No Material Facts That Are Reasonably In Dispute.

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the Defendant make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, Balboa, on the one hand, and Design Real Estate, on the other, entered into the EFA on or about June 12, 2024.  [*See* Ngo Decl., ¶3.]  Under the terms of

MOTION FOR DEFAULT JUDGMENT
CASE NO.: 8:25−cv−01770−JDE

the EFA, Balboa loaned to Design Real Estate the sum of $135,879.81, in order to finance the Collateral for its business.  [*See id*.]

Under the EFA, Design Real Estate was required to make sixty (60) monthly payments of $2,905.65, beginning on July 28, 2024. [*See id*., ¶4, <u>Exh. A</u>.]  The last payment received by Balboa was credited toward the payment due for April 28, 2025.  [*See id*., <u>Exh. B</u>.]  Therefore, on May 28, 2025, Design Real Estate breached the EFA by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendant's default there remained fifty (50) monthly payments, for a total of $145,282.50, due to Balboa.  [*See id*., ¶6, <u>Exh. B</u>.] Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …"  [*See id*., ¶7, <u>Exh. A</u>.] Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure.  [*See id*.]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more.  [*See id*.]  Based upon this formula, Balboa calculated that the amount due totaled $134,179.12.  [*See id*., <u>Exh. B</u>.]

In addition to the PV'D Rent, Defendant also owed the monthly payment for May 2025 in the amount of $2,905.65, which had not been accelerated as it was already due and payable. [*See id*., ¶8, <u>Exh. B</u>.]  Thus, **$137,084.77** remains owed to Balboa.  [*See id*.]  Defendant has since failed to make further payments.  [*See id.*]

Defendant cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If

anything, Defendant's refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.    Defendant's Defaults Are Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect."  *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F. Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the Defendant "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment.  *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due

to, excusable neglect.  On September 9, 2025, Balboa served Defendant by personal service upon Raymond Porter, the authorized agent for service of process of Design Real Estate, at 4625 Lindell Blvd., Ste. 209, Saint Louis, MO 63108. [*See* Dkt. 8.]

Further, Defendant was additionally served at the same address thereafter with the Default Entry Request.  [*See* Dkt. 9.]  Defendant has not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant.  Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect.  *See NewGen*, 804 F.3d at 616.

Here, Defendant has failed to acknowledge their wrongdoings and the allegations they face, even in the slightest degree.  Instead, Defendant has blatantly ignored Balboa's Complaint and all other papers filed thereafter.  Rather, Defendant's course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus would not constitute excusable neglect.

**F.**   **Policy Concerns Favor Default Judgment In This Matter.**

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added).  The policy preference to decide a case on its merits is not dispositive, and thus does not preclude a court from granting a default judgment. *See Penpower Tech, Ltd.*, 627 F. Supp. 2d at 1093 (Defendant's failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

12

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment.  As detailed in II.E., *supra*, Defendant has made it abundantly clear that they will not participate in this litigation or even acknowledge the instant action.  Defendant has deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability.  Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendant's refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendant for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense.  *See* Section II.A., *supra*.

### G.    Plaintiff Has Proven Its Damages.

Under the EFA, Design Real Estate was required to make sixty (60) monthly payments of $2,905.65, beginning on July 28, 2024.  [*See* Ngo Decl., ¶4, Exh. A.] The last payment received by Balboa was credited toward the payment due for April 28, 2025.  [*See id*., ¶5, Exh. B.]  Therefore, on May 28, 2025, Design Real Estate breached the EFA by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendant's default there remained fifty (50) monthly payments, for a total of $145,282.50, due to Balboa.  [*See id*., ¶6, Exh. B.] Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …"  [*See id*., ¶7, Exh. A.] Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure.  [*See id*.]  For example, a payment

MOTION FOR DEFAULT JUDGMENT
CASE NO.: 8:25–cv–01770–JDE

owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more. [*See id*.] Based upon this formula, Balboa calculated that the amount due totaled $134,179.12. [*See id*., Exh. B.]

In addition to the PV'D Rent, Defendant also owed the monthly payment for May 2025 in the amount of $2,905.65, which had not been accelerated as it was already due and payable. [*See id*., ¶8, Exh. B.] Thus, $137,084.77 remains owed to Balboa. [*See id*.] Defendant has since failed to make further payments. [*See id.*]

In addition, based on the amount due of $137,084.77, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Cal. Civ. Code section 3298(b), from May 28, 2025, the date of breach, to February 5, 2026, the date noticed for the hearing of this Default Motion, for a total interest amount of **$9,537.70**, accruing at a rate of **$37.55 per day**, until the entry of judgment. [*See id*., ¶9; *see also* Chen Decl., ¶¶5-6.]

Pursuant to the "Default and Remedies" section of the EFA, Balboa is also entitled to recover its attorneys' fees and costs from Defendant. [*See* Chen Decl., ¶7; *see also* Ngo Decl., Exh. A.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of $6,341.69. [*See id*.] Balboa has indeed incurred **$504.00**, in recoverable costs - $405.00 for filing of the Complaint, $99.00 for service upon Design Real Estate. [*See* Chen Decl., Exh. C.]

Altogether, this totals out to **$153,468.16** (as of February 5, 2026), calculated as follows:

| | | |
|---|---|---:|
| - | Amount owed: | $ 137,084.77 |
| - | Prejudgment Interest: | $ 9,537.70 |
| - | Attorneys' Fees | $ 6,341.69 |
| - | Recoverable Costs: | $ 504.00 |
| - | Total: | **$153,468.16** |

III.  **CONCLUSION**

Based on Balboa's Default Judgment Motion, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Motion against Defendant, in the total amount of **$153,468.16**.

DATE: January 8, 2026                         SALISIAN | LEE LLP

                                              By: _____

                                                    Neal S. Salisian
                                                    Jared T. Densen
                                                    Patty W. Chen

                                              Attorneys for Plaintiff
                                              AMERIS BANK d/b/a BALBOA CAPITAL